UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VICTOR GUTTMANN,<br><br>  Plaintiff,<br><br>  v.<br><br>OLE MEXICAN FOODS, INC.,<br><br>  Defendant. | Case No. 14-cv-04845-HSG<br><br>**ORDER GRANTING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Re: Dkt. No. 48 |

Before the Court is Plaintiff Victor Guttman's ("Plaintiff") Motion for Preliminary Approval of Class Action Settlement. Dkt. No. 48 ("Mot."). The Court has carefully considered Plaintiff's moving papers, the parties' settlement agreement, and the oral argument submitted. For the reasons set forth below, the Court **GRANTS** Plaintiff's motion for preliminary approval.

I.  **BACKGROUND**

   A.  **Litigation History**

Defendant Ole Mexican Foods, Inc. manufactures, markets, and sells food products, including its "Xtreme Wellness" line of tortillas ("Products"). Dkt. No. 1 ("Compl.") ¶¶ 4-5. This action began on October 31, 2014, when Plaintiff filed a complaint, on behalf of himself and those similarly situated, alleging that Defendant failed to properly disclose that the Products contain partially-hydrogenated oil ("PHO"), an artificial trans-fat food additive. *Id.* ¶¶ 5, 9, 11.

The Complaint alleges six causes of action: (1) three kinds of violations of the California Unfair Competition Law ("UCL") (Cal. Bus. & Prof. Code § 17200, *et seq.*); (2) violation of the California False Advertising Law (Cal. Bus. & Prof. Code § 17500, *et seq.*); (3) violation of the California Consumer Legal Remedies Act ("CLRA") (Cal. Civ. Code § 1750, *et seq.*); and (4) breach of express warranty.

Defendant filed a motion to dismiss on January 5, 2015, Dkt. No. 12, and it filed a motion

to stay discovery on February 5, 2015, Dkt. No. 24. Plaintiff opposed both motions, Dkt. Nos. 19 & 26, and Defendant replied accordingly, Dkt. Nos. 23 & 31. Defendant then withdrew both motions, with Plaintiff's consent, in light of a recent decision by the Ninth Circuit. Dkt. No. 37. On June 9, 2015, the parties represented to the Court that they were finalizing a settlement agreement. Dkt. No. 41. On July 2, 2015, Plaintiff filed the instant motion for preliminary approval of class action settlement. Dkt. No. 48. The Court held a hearing on the motion on August 27, 2015, and took the matter under submission. Dkt. No. 51.

### B. Overview of the Proposed Settlement

The parties executed a Class Action Settlement Agreement ("Settlement Agreement") that details the provisions of the proposed settlement. (Dkt. No. 48-2, Ex. 1.) The key terms are:

<u>Class Definition</u>: The proposed settlement class ("Settlement Class") consists of "all persons and entities who purchased one or more Products for household or personal use in the United States during the period from November 1, 2011, through [the close of the notice period]."

<u>Injunctive Relief</u>: The only benefit that the Settlement Class would receive under the Settlement Agreement is that Defendant would immediately refrain from using any PHOs for a period of ten years from the date of final approval of the Settlement Agreement.

<u>Class Notice</u>: Defendant would bear the cost of providing notice to the class ("Class Notice"). Because Defendant sells the Products to consumers through third-party retailers, no contact information is available for members of the Settlement Class ("Class Members"). Instead, Defendant would post notice via a long-form notice on a settlement website, short-form notice in USA Today, and advertisements on Facebook.

<u>Attorneys' Fees and Costs</u>: Plaintiff's counsel may seek up to $85,000 in fees and costs. Defendant agrees not to oppose such an application.

<u>Incentive Award</u>: Plaintiff may seek an incentive award of up to $1,800 for his service as class representative. Defendant agrees not to oppose such an application.

<u>Release</u>: In exchange for injunctive relief, the Settlement Class would release all known and unknown claims, whether for remedies at law or in equity, regarding, among other things, the manufacturing, handling, advertising, sale, labeling, and the ingredients of the Products, excepting

1   claims for personal injuries (disease or other adverse physical condition).

2   <u>Opt-Out, Objection, and Comment Procedure</u>:  Any Class Member who does not approve
3   of the Settlement Agreement may opt out of the Settlement Class and pursue his or her own claims
4   against Defendant.  Class Members may also remain in the class and submit an objection or appear
5   at the final approval hearing to comment on the fairness of the Settlement Agreement.

## II.   PROVISIONAL CLASS CERTIFICATION

Class certification under Rule 23 is a two-step process.  First, a plaintiff must demonstrate that the four requirements of Rule 23(a) are met: numerosity, commonality, typicality, and adequacy.  "Class certification is proper only if the trial court has concluded, after a 'rigorous analysis,' that Rule 23(a) has been satisfied." *Wang v. Chinese Daily News, Inc.*, 709 F.3d 829, 833 (9th Cir. 2013) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011)).  Second, a plaintiff must establish that one of the bases for certification in Rule 23(b) is met.  Here, by invoking Rule 23(b)(2), Plaintiff must show that Defendant "has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief . . . is appropriate respecting the class as a whole." *Dukes*, 131 S. Ct. at 2557.  Certification under Rule 23(b)(2) is typically proper where the plaintiff asserts a "pattern or practice" claim. *Walters v. Reno*, 145 F.3d 1032, 1047 (9th Cir. 1998).  The party seeking class certification bears the burden of demonstrating by a preponderance of the evidence that both steps are satisfied. *Dukes*, 131 S. Ct. at 2551.

### A.   Numerosity

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable."  Although Plaintiff does not provide a clear estimate of how many proposed Class Members there are, numerosity is satisfied here because the Settlement Class allegedly includes tens, if not hundreds, of thousands of members. *See Mazza v. Am. Honda Motor Co.*, 254 F.R.D. 610, 617 (C.D. Cal. 2008) ("As a general rule, classes of forty or more are considered sufficiently numerous.")  Joinder of all the proposed Class Members would be impracticable in this action.

### B.   Commonality

A class is certifiable only if "there are questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  For the purposes of Rule 23(a)(2), even a single common question is

3

sufficient. *Dukes*, 131 S. Ct. at 2556. The common contention, however, "must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 2551. "What matters to class certification . . . is not the raising of common 'questions' – even in droves – but rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.* (emphasis in original) (internal citation omitted).

Commonality is met in this case because each proposed Class Member purchased at least one of the Products from Defendant and was injured due to the same allegedly improper labeling. Whether Defendant's promotion and labeling of the Products was unlawful, fraudulent, or unfair under California's consumer protection statutes are questions of law common to the entire class that would generate classwide answers. *See, e.g.*, *Guido v. L'Oreal, USA, Inc.*, 284 F.R.D. 468, 477 (C.D. Cal. 2012) (finding of commonality warranted in consumer class action because there were common factual and legal questions regarding whether packaging materials were misleading or deceptive under the reasonable consumer test set forth under the UCL and CLRA). The same is true of whether the Products violated any express warranty as set forth in statements made on the packaging such as "Healthy" and "Trans Fat Free." *See, e.g.*, *Allen v. Hyland's Inc.*, 300 F.R.D. 643, 669 (C.D. Cal. 2014) (finding of commonality warranted in consumer class action alleging breach of express warranty regarding packaging materials because susceptible to common proof).

### C.   Typicality

In certifying a class, courts must find that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed R. Civ. P. 23(a)(3). "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Id.* (internal citation and quotation omitted).

Typicality is satisfied here because Plaintiff's claims are at least "reasonably co-extensive" with those of the Settlement Class. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir.

4

1998).  Plaintiff and the Settlement Class each purchased the same line of Products from Defendant and allegedly were not placed on notice about Defendant's inclusion of trans fat.

### D. Adequacy of Representation

"The adequacy of representation requirement . . . requires that two questions be addressed: (a) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (b) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000).  The requirement "tends to merge with the commonality and typicality criteria of Rule 23(a)." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 626 n.20 (1997) (internal marks omitted).  Among other purposes, these requirements determine whether "the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 158 n.13 (1982).  Adequacy of representation requires two legal determinations: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020.

No evidence in the record suggests that the class representative or counsel have a conflict of interest with other class members.  Plaintiff's counsel has experience prosecuting food labeling class actions, including those seeking injunctive relief.  *See* Dkt. No. 48-2.  The Court finds that proposed class counsel and Plaintiff have sufficiently prosecuted this action on behalf of the class and will continue to do so.  The adequacy requirement is therefore satisfied.

### E. Cohesiveness of Injunctive Relief

Under Rule 23(b)(2), Plaintiff must show that Defendant "has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief . . . is appropriate respecting the class as a whole." *Dukes* 131 S. Ct. at 2557.  Here, certification of an injunctive relief class is appropriate because Plaintiff alleges a uniform pattern or practice of improper labeling with regard to the PHOs in the Products.  *See Walters*, 145 F.3d at 1047.  For that reason, multiple injunctions are not necessary to achieve the desired outcome, namely, to bar Defendant from using PHOs in the Products for a period of ten years.  Accordingly, the injunctive relief requested is cohesive.

### F. Appointment of Class Representative and Class Counsel

Because the Court finds that Plaintiff meets the commonality, typicality, and adequacy requirements of Rule 23(a), the Court appoints Plaintiff as class representative. When a court certifies a class, the court must also appoint class counsel, giving due consideration to:

> (i) the work counsel has done in identifying or investigating potential claims in the action;
> (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
> (iii) counsel's knowledge of the applicable law; and
> (iv) the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A). But, a court "may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). In light of the fact that Plaintiff's counsel has experience litigating food labeling class actions, *see* Dkt. No. 48-2, and given its diligence in prosecuting this action to date, the Court appoints The Weston Firm as Class Counsel in this case.

## III. PRELIMINARY APPROVAL

Under Federal Rule of Civil Procedure 23(e), "[t]he claims, issues, or defenses of a certified class may be settled . . . only with the court's approval." The Ninth Circuit maintains a "strong judicial policy" that favors the settlement of class actions. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). "The purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008). Accordingly, before a court approves a settlement it must conclude that the settlement is "fundamentally fair, adequate and reasonable." *In re Heritage Bond Litig.*, 546 F.3d 667, 674-75 (9th Cir. 2008).

In general, the district court's review of a class action settlement is "extremely limited." *Hanlon*, 150 F.3d at 1026. Where the parties reach a class action settlement prior to class certification, however, courts apply "a higher standard of fairness and a more probing inquiry than may normally be required under Rule 23(e)." *Dennis v. Kellogg Co.*, 697 F.3d 858, 864 (9th Cir. 2012) (citation and internal quotations omitted). Courts "must be particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their

own self-interests and that of certain class members to infect the negotiations." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011).

At the preliminary approval stage, the Court may grant preliminary approval of a settlement and direct notice to the class if the settlement: (1) appears to be the product of serious, informed, non-collusive negotiations; (2) has no obvious deficiencies; (3) does not improperly grant preferential treatment to class representatives or segments of the class; and (4) falls within the range of possible approval. *See In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007); Joseph M. McLaughlin, McLaughlin on Class Actions: Law and Practice § 6.6 (7th ed. 2011) ("Preliminary approval is an initial evaluation by the court of the fairness of the proposed settlement, including a determination that there are no obvious deficiencies such as indications of a collusive negotiation, unduly preferential treatment of class representatives or segments of the class, or excessive compensation of attorneys . . . ."). The Court considers the settlement as a whole, rather than its components, and lacks the authority to "delete, modify or substitute certain provisions." *In re Tableware*, 484 F. Supp. 2d at 1079. Rather, "[t]he settlement must stand or fall in its entirety." *Id.*

### A. The Settlement Process

The first factor the Court examines is the means by which the parties arrived at the settlement. "An initial presumption of fairness is usually involved if the settlement is recommended by class counsel after arm's-length bargaining." *Harris v. Vector Mktg. Corp.*, No. 08-cv-5198, 2011 WL 1627973, at *8 (N.D. Cal. Apr. 29, 2011) (citation omitted). There is no evidence in the record suggesting that the parties engaged in any collusion that would rebut the presumption accorded class action settlements. The parties reached a settlement agreement in the wake of a Ninth Circuit decision that may have undermined Defendant's legal position. Accordingly, the Court concludes that the Settlement Agreement was executed in good faith.

### B. Obvious Deficiencies

The second factor the Court considers is whether there are obvious deficiencies in the Settlement Agreement. The Court finds no obvious deficiencies in the Settlement Agreement.

### C. Preferential Treatment

Under the third factor, the Court examines whether the Settlement Agreement provides preferential treatment to any class member. Because the only relief accord to the Settlement Class is injunctive, there is no risk of unequal treatment. And, while the Settlement Agreement authorizes Villanueva to seek an incentive award of $1,800 for his role as named plaintiff in this lawsuit, the Court will ultimately determine at final approval whether he is entitled to an award and the reasonableness of the amount requested. Generally speaking, however, the Ninth Circuit has recognized that incentive awards to named plaintiffs in a class action are permissible and do not render a settlement unfair or unreasonable. *See Stanton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003); *see also Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958-69 (9th Cir. 2009).

### D. Whether the Settlement Agreement Falls Within the Range of Possible Approval

Finally, the Court must consider whether the Settlement Agreement falls within the range of possible approval. "To evaluate the range of possible approval criterion, which focuses on substantive fairness and adequacy, courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer." *Vasquez v. Coast Valley Roofing, Inc.*, 670 F. Supp. 2d 1114, 1125 (E.D. Cal. 2009) (citing *In re Tableware*, 484 F. Supp.2d at 1080) (internal quotation marks omitted). In doing so, the Court may preview the factors that ultimately inform final approval: (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of class members to the proposed settlement. *See Churchill Village v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (citation omitted). Although the Court undertakes a more in-depth investigation of the foregoing factors at the final approval stage, these factors inform whether the Settlement Agreement falls within the "range of possible approval."

The Court first reviews the strength of Plaintiff's case and the risk of proceeding to trial. While Plaintiff maintains that he has a strong case, he also points out that there are at least two possibly fatal defenses to class certification. Mot. at 8. Namely: (1) Defendant used different

1   product packaging over the course of the class period, which further varied across sales channels
2   and geographical regions; and (2) Class Members did not pay a uniform price for the Products. *Id.*
3   at 8-9.  Plaintiff argues that these variances create significant questions about the propriety of class
4   certification to the extent that he would seek to certify a damages class under Rule 23(b)(3), for
5   which common questions must predominate over individualized questions.  Assuming that
6   Plaintiff could certify the class despite these issues, he also contends that there would be potential
7   evidentiary problems at trial, given that he did not retain any proofs of purchase.  Both of these
8   arguments are well taken, especially given that the Settlement Class may include hundreds of
9   thousands of people, and the Court finds that the litigation risks weigh in favor of settlement.

10        The Court next balances those risks against the value of the proposed settlement relief.
11  The Settlement Agreement provides no monetary relief to the Settlement Class, but would enjoin
12  Defendant from using any PHOs in its Products for a period of ten years.  Mot. at 9-10.  Given that
13  Rule 23(b)(2) is designed for injunctive-relief classes, a lack of monetary recovery in and of itself
14  is not problematic for preliminary approval.  Instead, the question is whether the injunctive relief
15  provided under the Settlement Agreement provides the Settlement Class with something of
16  sufficient value to justify the release of potentially meritorious claims.  The release in the
17  Settlement Agreement is broad and seems to include any known or unknown claims relating to the
18  Food Products, excluding those for personal injury.  Dkt. 48-2 at § 1.25.  Balanced against this
19  broad release, there is a valid question as to whether the injunctive relief accorded under the
20  Settlement Agreement is redundant of a final determination made by the Food and Drug
21  Administration on June 17, 2015, banning certain trans-fats from food products in the United
22  States.  *See* 80 C.F.R. § 34650.  Plainly, the settlement should not be approved if it provides an
23  illusory benefit to the Settlement Class.

24        Anticipating that potential problem, Plaintiff highlights three key distinctions between the
25  relief provided by the Settlement Agreement and the FDA regulation: (1) the ten-year ban on
26  Defendant using PHOs in the Food Products under the Settlement Agreement would go into effect
27  immediately, whereas the FDA regulation does not require compliance until June 18, 2018, *see id.*,
28  assuming it survives any and all rulemaking challenges; (2) the Settlement Agreement bars

1  Defendant from using all PHOs in the Food Products, whereas the FDA regulation permits food
2  manufactures to use partially-hydrogenated menhaden oil and partially-hydrogenated erucic acid
3  rapeseed oil, which were used extensively in the 1970s and 1980s; and (3) Defendant would be
4  free to seek special approval to continue using PHOs.  Mot. at 10.

5  Based on these additional benefits to the Settlement Class apart from the FDA regulation,
6  the Court finds that the injunctive relief provided under the Settlement Agreement is not illusory
7  and may provide substantial benefits.  That said, when the Settlement Class is formally notified of
8  the terms of the Settlement Agreement, the Court will closely evaluate their reaction, including the
9  number and substance of any objections or comments.  At this time, however, the Court finds that
10 the Settlement Agreement facially falls within the range appropriate for preliminary approval.

11 **IV.    PROPOSED CLASS NOTICE AND NOTIFICATION PROCEDURES**

12 In a Rule 23(b)(2) class action, due process does not require that the Court afford absent
13 class members notice or an opportunity to opt out.  *Dukes*, 131 S. Ct. at 2558.  For that reason,
14 Rule 23(c)(2)(A) provides only that "the court may direct appropriate notice to the class."

15 As part of the Settlement Agreement, the parties have agreed to provide formal notice and
16 binding opt-out rights to the Settlement Class.  The notice program includes: (1) the creation of a
17 settlement website that will contain the Settlement Agreement and other case-related documents in
18 English and Spanish; (2) the one-time publication of a long-form settlement notice in *USA Today*
19 that will reach an estimated 1.1 million people; and (3) banner advertisements on Facebook that
20 will be displayed 25 million times.  (Dkt. No. 48-2 § 6 & Ex. C.)  Class Members may also opt out
21 of the Settlement Agreement by sending in a request for exclusion.  *Id.* § 9.3.

22 The parties propose using Rust Consulting ("Rust") to administer the settlement.  *Id.* § 6.2.
23 Rust would implement the notice program, as well as process any requests for exclusion,
24 objections, comments, and other correspondence from the Settlement Class.  *Id.*  The Court finds
25 that Rust is qualified to perform the tasks associated with administering the notice outlined in the
26 Settlement Agreement and therefore approves Rust as the settlement administrator.

27 **V.     AWARD OF ATTORNEYS' FEES AND COSTS**

28 The settlement notice informs class members that class counsel will file a motion seeking

10

an award of attorneys' fees in the amount of $85,000, inclusive of costs.  Dkt. 48-2 § 10.1.

## VI. SETTLEMENT APPROVAL SCHEDULE

The Court adopts the settlement approval schedule set forth in the Settlement Agreement. *See* Dkt. 48 at 16.

| Event | Date |
| --- | --- |
| Deadline for Claims Administrator to Complete Notice | December 12, 2015 |
| Deadline for Class Counsel to File Motion for Final Approval | December 31, 2015 |
| Deadline for Class Counsel to File Attorneys' Fees Application and Request for Incentive Award | December 31, 2015 |
| Deadline for Class Members to File Objection or Request for Exclusion | January 12, 2016 |
| Deadline for Class Members File Notice of Intent to Appear at Final Fairness Hearing | January 12, 2016 |
| Deadline for the Parties to File Responses to Any Objections | January 27, 2016 |
| Deadline for Claims Administrator to File List of Timely Requests for Exclusion | February 4, 2016 |
| Deadline for Defendant to File CAFA Certification | February 11, 2016 |
| Final Fairness Hearing | February 11, 2016 at 2:00 p.m. |

## VII. CONCLUSION

The Court **GRANTS** Plaintiff's Motion for Preliminary Approval of the Class Action Settlement.  The parties are directed to comply with the instructions provided above.

**IT IS SO ORDERED.**

Dated:  November 13, 2015

_____
HAYWOOD S. GILLIAM, JR.
United States District Judge