UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VICTOR GUTTMANN,<br><br>Plaintiff,<br><br>v.<br><br>OLE MEXICAN FOODS, INC.,<br><br>Defendant. | Case No. 14-cv-04845-HSG<br><br>**ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND GRANTING MOTION FOR ATTORNEYS' FEES AND COSTS**<br><br>Re: Dkt. Nos. 54, 55 |

Before the Court are Plaintiff Victor Guttman's ("Plaintiff") motions for final approval of class action settlement, Dkt. No. 54 ("Mot."), and for attorneys' fees and costs, Dkt. No. 55 ("Fees Mot."). Defendant Ole Mexican Foods, Inc. ("Defendant") does not oppose either motion.

For the reasons set forth below, the Court **GRANTS** Plaintiff's motions for final approval of class action settlement and for attorneys' fees and costs.

## I.   BACKGROUND

Plaintiff filed this food-labeling class action on October 31, 2014. Dkt. No. 1 ("Compl."). Plaintiff alleges that Defendant failed to properly disclose that its "Xtreme Wellness" line of tortillas contain partially-hydrogenated oil, an artificial trans-fat food additive. *Id.* ¶¶ 5, 9, 11. On that basis, Plaintiff asserts six causes of action against Defendant for violating California's unfair competition law (Cal. Bus. & Prof. Code § 17200, *et seq.*) ("UCL"), False Advertising Law, (Cal. Bus. & Prof. Code § 17500, *et seq.*) ("FAL"), and Consumer Legal Remedies Act (Cal. Civ. Code § 1750, *et seq.*) ("CLRA"), and for breaching express warranties. *Id.* ¶¶ 123-76.

Defendant filed a motion to dismiss on federal preemption grounds, Dkt. No. 12, and a motion to stay discovery pending resolution of that motion, Dkt. No. 24. But Defendant withdrew both after new case law emerged from the Ninth Circuit addressing the preemption issue. Dkt.

No. 37. The parties agreed to settle the case on a classwide basis shortly thereafter. Dkt. No. 41. Before the parties ceased active litigation, Plaintiff served some written discovery on Defendant, to which Defendant served objections and responses. Mot. at 10.

Plaintiff filed a motion for preliminary approval of the class action settlement on July 2, 2015. Dkt. No. 48. The proposed settlement would enjoin Defendant from using any partially-hydrogenated oils in their Xtreme Wellness line of tortillas for a period of ten years. *Id.* at 2. In exchange, the putative class would release their claims against Defendant regarding, among other things, the manufacturing, advertising, sale, labeling, and the ingredients of these tortilla products, excepting personal injury claims. *Id.* Defendant agreed to pay for class notice, which included: (1) publishing a long-form class notice in *USA Today*; (2) displaying banner advertisements on Facebook (at least 25,000 times); and (3) creating a bilingual website that provided the settlement agreement and other case-related documents. *Id.* And, upon final approval, the parties agreed that Plaintiff could seek up to $1,800 as an incentive and Plaintiff's counsel could seek up to $85,000 in fees and costs without opposition from Defendant. *Id.* The Court granted preliminary approval, provisionally certifying the proposed nationwide injunctive-relief class under Federal Rule of Civil Procedure 23(b)(2) and directing class notice as agreed by the parties. Dkt. No. 52.

On December 31, 2016, Plaintiff filed the instant motions for final approval of class action settlement and for attorneys' fees and costs. In his final approval motion, Plaintiff represents that the class notice program was implemented as the Court directed. Mot. at 5-6. The settlement administrator received no objections to the proposed settlement from class members. Dkt. No. 56.

The Court held a final fairness hearing on February 11, 2016. Dkt. No. 58. At the hearing, no class members objected, commented, or otherwise appeared. The Court took the matter under submission, but also ordered that: (1) Defendant file a declaration confirming that the Facebook component of the notice plan was performed, which was not apparent from the moving papers; and (2) Plaintiff file a declaration setting forth what Plaintiff did to assist this case and the hours he spent doing so. *Id.* Both declarations were timely filed as requested. Dkt. Nos. 59 & 60.

///

///

## II. DISCUSSION

### A. Motion for Final Approval of Class Action Settlement

The Court now considers whether final approval of the proposed class action settlement is appropriate. Finding that the parties performed the class notice program as directed and that there were no objections to the proposed settlement, the Court grants final approval.

#### 1. Adequacy of Class Notice

Federal Rule of Civil Procedure 23(e) governs class action settlements, including notice. When any certified class settles its claims, courts "must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1); *see also* William B. Rubenstein, Newberg on Class Actions § 4:36 (5th ed. rev. June 2016) ("Rule 23(c) makes notice of a *class certification decision* discretionary [for Rule 23(b)(2) class actions], but Rule 23(e) requires that (b)(2) class members receive notice of any *proposed settlement*[.]") (emphasis original). Additionally, Rule 23(h) requires that class members receive notice of any claim for an award of attorneys' fees and costs. Fed. R. Civ. P. 23(h)(1); *see also* Rubenstein, *supra*, § 4:36.

In its order granting preliminary approval, the Court directed a three-part notice plan. That plan included: (1) publishing a long-form, one-time class notice in *USA Today*; (2) displaying banner advertisements on Facebook at least 25,000 times; and (3) creating a bilingual website that provided the settlement agreement and other case-related documents to interested persons. *Id.* Plaintiff's counsel has submitted a declaration attesting that the newspaper notice was published and that the settlement website was properly created. Dkt. No. 54-1 ¶¶ 3, 5-8. Rust Consulting, the settlement administrator, has also submitted a declaration, attesting that the Facebook notice was published in the manner and frequency directed. Dkt. No. 60. The Court finds that the class notice delivered complied with the preliminary approval order, Rule 23(e), and Rule 23(h).

#### 2. Fairness, Reasonableness, and Adequacy of Settlement

Federal Rule of Civil Procedure 23(e) requires that "[t]he claims, issues, or defenses of a certified class may be settled . . . only with the court's approval." Courts may approve of a class action settlement "only after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1025 (9th Cir. 1998). In

making this decision, courts consider the following factors:

> "the strength of the plaintiff's case; the risk expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement."

*Id.* (hereinafter, the "*Hanlon* factors"). At the end of the day, however, "the decision to approve or reject a settlement is committed to the sound discretion of the trial judge." *Id.*

In its order granting preliminary approval, the Court set forth its reasoning as to why the proposed settlement was negotiated in good faith, lacked any obvious deficiencies, did not treat any class member in an improperly preferential manner, and fell within the range of approval. *See* Dkt. No. 52 at 6-10. Nothing has happened since then that would change this analysis, but the Court proceeds to briefly discuss each of the approval factors set forth above.

### a) *Plaintiff's Case and the Risk of Continued Class Action Litigation*

Under the first three *Hanlon* factors, the Court "must balance against the risks of continued litigation, including the strengths and weaknesses of Plaintiff's case, the benefits afforded to class members, and the immediacy and certainty of a recovery." *Ching v. Siemens Indus., Inc.*, No. 11-CV-04838, 2014 WL 2926210, at *3 (N.D. Cal. Jun. 27, 2014). Where a plaintiff must overcome "significant barriers" to prove his claims, this factor weighs in favor of settlement approval. *See Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 851 (N.D. Cal. 2010).

Plaintiff argues that both sides would face serious risks in continued litigation. Mot. at 8-11. In support of this proposition, Plaintiff cites to cases that highlight the difficulties of litigating class actions alleging misleading food labels. *See, e.g., Ries v. Ariz. Beverages USA LLC*, No. 10-01139, 2013 WL 1287416, at *16 (N.D. Cal. Mar. 28, 2013) (decertifying Rule 23(b)(2) food-labeling class action asserting claims about misleading labels and granting summary judgment for the defendant). The Court agrees that these types of food labeling claims are difficult to maintain. For example, Plaintiff would need to prove that Defendant's labels, including "Xtreme Wellness," were misleading entirely by virtue of the product containing a small amount of trans-fat. *See* Compl. ¶ 69-71.

1     Accordingly, the first three *Hanlon* factors weigh in favor of final settlement approval.

2             b)    *Settlement Amount*

3     The fourth *Hanlon* factor, which considers the amount offered in settlement, "is generally considered the most important, because the critical component of any settlement is the amount of relief obtained by the class." *Bayat v. Bank of the West*, No. 13-cv-02376, 2015 WL 1744342, at *4 (N.D. Cal. Apr. 15, 2015). Because "the interests of class members and class counsel nearly always diverge, courts must remain alert to the possibility that some class counsel may urge a class settlement at a low figure or on a less-than-optimal basis in exchange for red-carpet treatment on fees." *In re HP Inkjet Printer Litig.*, 716 F.3d 1173, 1178 (9th Cir. 2013).

As a Rule 23(b)(2) class action, the proposed settlement agreement provides no monetary relief for the class members, but instead provides injunctive relief in the form of a ten-year ban on Defendant's use of partially-hydrogenated oils in its Xtreme Wellness line of tortillas. As the Court explained in its order granting preliminary approval, the proposed settlement provides substantial health benefits to all purchasers of Defendant's Xtreme Wellness tortillas in light of the evidence offered by Plaintiff about the health effects of partially-hydrogenated oils. Dkt. No. 52 at 9-10. Despite the fact that the Food and Drug Administration has already proposed a ban on some of these same food additives, the proposed settlement would go into effect years earlier, it bars the use of all types of these food additives, unlike the FDA regulation, and the FDA regulation would still permit carve-outs. *Id.* Accordingly, the Court finds that the proposed relief is adequate.

        c)    *Stage of Proceedings*

The fifth *Hanlon* factor considers the extent of discovery completed and the stage of the proceedings. "This factor evaluates whether the parties have sufficient information to make an informed decision about settlement." *Larsen v. Trader Joe's Co.*, No 11-cv-05188, 2014 WL 3404531, at *5 (N.D. Cal. Jul. 11, 2014) (quotation marks omitted). "[A]s long as the parties have sufficient information to make an informed decision about settlement, formal discovery is not a necessary ticket to the bargaining table." *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 257 (N.D. Cal. 2015). "Rather, the court's focus is on whether the parties carefully investigated the claims before reaching a resolution." *Id.* (quotation marks and citation omitted).

1    While this case settled before class certification and before significant discovery was
2    taken, the parties briefed the merits of Plaintiff's case in connection with Defendant's motion to
3    dismiss in some detail. *See* Dkt. Nos. 12, 19 & 23. The parties debated whether Plaintiff's claims
4    were preempted, had extraterritorial scope outside of California, were based on labels constituting
5    actionable non-puffery, and whether Plaintiff could state a California unfair competition claim
6    under its unlawfulness prong. *See id.* Most importantly, Defendant argued that the FDA requires
7    any product with less than .5 grams of trans fat to disclose the content as "zero" and, therefore, the
8    "Trans Fat free" statement on the front of the Xtreme Wellness packages was legal. Dkt. No. 12 at
9    3-7. While the Ninth Circuit ultimately rejected this argument, the parties were left with sufficient
10   information to make an informed decision about settlement. Accordingly, this factor also weighs
11   in favor of approving the settlement agreement.

d)   *Experience and Views of Counsel*

"Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995). The Court already found class counsel's qualifications and experience sufficient to represent the class' interests in this action. Dkt. No. 52 at 6. Nothing has changed since that time. Accordingly, this factor weighs in favor of settlement approval.

e)   *Class Member Reaction*

"It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *In re Omnivision*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008). A small number of objections to and opt-outs from a settlement "presents at least some objective positive commentary as to its fairness." *Hanlon*, 150 F.3d at 1027. Here, none of the class members objected to the settlement agreement or opted out. Dkt. No. 56 at 1. The Court therefore finds that this final factor also weighs in favor of approval.

f)   *Summary*

After considering and weighing all of the above *Hanlon* factors, the Court finds that the settlement class members received adequate notice and that the settlement is fair, adequate, and

reasonable. Accordingly, Plaintiffs' motion for final approval of class action settlement is granted.

### B. Motion for Attorneys' Fees and Costs

Having approved the settlement agreement, the Court now turns to Plaintiff's motion for attorneys' fees and costs. The Court finds that Plaintiff's request for attorneys' fees and costs is proper and reasonable, as is Plaintiff's request for a class representative incentive award.

#### 1. Attorneys' Fees

Under the terms of the settlement agreement, Plaintiff was permitted to request 85,000 in attorneys' fees and costs without opposition from Defendant. Fees Mot. at 7. Plaintiff requests $82,837.15 in attorneys' fees, in line with the parties' agreement.

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). Even where an award is authorized by the parties' agreement, "courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable[.]" *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 943 (9th Cir. 2011). The reasonableness of a fees agreement is determined by state law when state law provides the basis for the claims asserted. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). In this case, California law controls the analysis of the parties' fees' agreement because Plaintiff seeks to recover under California's UCL, FAL, CLRA, and express warranty law. *See* Compl. ¶¶ 123-76.[1]

"The two primary methods for determining reasonable fees in the class action settlement context are the 'lodestar/multiplier' method and the 'percentage of recovery' method. *Wershba v. Apple Computers, Inc.*, 91 Cal. App. 4th 224, 254 (2001). "Because the settlement [here] resulted in injunctive relief, the lodestar method is the appropriate measure for calculating attorneys' fees." *Lilly v. Jamba Juice Co.*, No. 13-cv-02998, 2015 WL 2062858, at *5 (N.D. Cal. May 4, 2015).

The first step in the lodestar analysis is to multiply the number of hours counsel reasonably

---

[1] The CLRA itself contains a mandatory fee-shifting provision that awards attorneys' fees to a prevailing plaintiff. Cal. Civ. Code § 1780(e). When the basis for an attorneys' fees motion is both a class action settlement agreement and a fee-shifting statute, the analysis remains the same. *See, e.g.*, *Tadepalli v. Uber Techs., Inc.*, No. 15-cv-04348, 2016 WL 1622881, at *10 (N.D. Cal. Apr. 25, 2016) (applying California's lodestar test where a class action settlement agreement and CLRA both provided the basis for the plaintiff's attorneys fees' motion).

1  expended on the litigation by a reasonable hourly billing rate.  *See Graham v. DaimlerChrsyler*
2  *Corp.*, 34 Cal. 4th 553, 579 (2004); *Hanlon v. Chrysler Group, Inc*., 150 F.3d 1011, 1029 (9th Cir.
3  1998).  Once this raw lodestar figure is determined, courts may apply a multiplier depending on
4  several factors, including: (1) the results obtained; (2) the novelty and difficulty of the questions
5  involved; (3) the requisite legal skill necessary to litigate the case; (4) the preclusion of other
6  employment due to acceptance of the case; and (5) whether the fee is fixed or contingent.  *See*
7  *Serrano*, 20 Cal. 3d at 48.

8  Class counsel declares that they have expended 448.5 hours of work on this case as of
9  December 30, 2015.  Fees Mot. at 8.  This time includes 171 attorney hours and 277.5 paralegal
10 hours.  *Id.*  Counsel has not provided detailed timesheets documenting the amount of time spent on
11 each task, but instead has submitted a summary of time and rates of each firm member, Mot. for
12 Fees, Appx. 1, and a description of the tasks performed, Dkt. No. 55-1 ("Weston Decl.") at 10.
13 That summary shows that Plaintiff's attorneys and paralegals expended 39.7 hours investigating
14 and drafting the complaint, 77.8 hours opposing Defendant's motion to dismiss, 69.3 hours
15 working on discovery-related matters, 25.6 hours negotiating the settlement, 18.1 hours drafting
16 an unfiled motion for class certification, 174.6 hours drafting the motions for preliminary and final
17 approval of class action settlement, and 43.4 hours on administrative tasks.  Weston Decl. at 10.
18 The Court finds that the time class counsel expended was reasonable.

19 With the total amount of time established, class counsel seeks to apply the following
20 billing rates: $605 for Mr. Weston, $525 for Mr. Elliot, $340 for Ms. Persinger, and $305 for Mr.
21 Joseph, as well as rates of $215 and $135 for senior and junior paralegals.  *Id*. at 16-17.  To
22 support these rates, class counsel cites several similar cases from this circuit in which counsel was
23 awarded equal or slightly lower fee rates.  *See, e.g.*, *In re Quaker Oats Labeling Litig.*, 2014 U.S.
24 Dist. LEXIS 104941, at *4 (N.D. Cal. Jul. 29, 2014) (awarding Mr. Weston a rate of $580, Ms.
25 Persinger $340, and Mr. Joseph $305); *Bruno v. Quten Research Inst.*, LLC, 2013 U.S. Dist.
26 LEXIS 35066, at *9-10 (C.D. Cal. Mar. 13, 2013) (awarding Mr. Weston a rate of $550 and Ms.
27 Persinger $315).  Moreover, class counsel's rates are in line with the prevailing rates in this
28 district for consumer class actions.  *See, e.g.*, *In re Magsafe Apple Power Adapter Litig.*, No. 09-

8

1   CV-01911, 2015 WL 428105, at *12 (N.D. Cal. Jan. 30, 2015) ("In the Bay Area, reasonable hourly rates for partners range from $560 to $800, for associates from $285 to $510, and for paralegals and litigation support staff from $150 to $240.).  Accordingly, the Court finds that the billing rates requested by class counsel are reasonable.

Multiplying the time expended by the rates approved, Plaintiff's lodestar is $144,779. Fees Mot. at 16 & Appx. 1.  Plaintiff requests, however, only $85,000 in attorneys' fees.  This translates to a multiplier of .59, essentially a negative multiplier.  When determining a reasonable fee in a class action, the lodestar figure is "presumptively reasonable." *In re Bluetooth*, 654 F.3d at 941.  Although Plaintiff did not secure any monetary relief for the class and the questions litigated in this case were not particularly novel or difficult, the Court finds that Plaintiff's fees' request is reasonable, especially when given a 'negative' multiple.  *See Serrano*, 20 Cal. 3d at 48. For that reason, the Court grants Plaintiff's request for attorneys' fees.

### 2. Costs

Plaintiff's counsel is entitled to "recover as part of the award of attorneys' fees those out-of-pocket expenses that would normally be charged to a fee paying client." *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994).  Class counsel has provided an itemized list of the costs incurred during this litigation.  Fees Mot., Appx. 2.  Class counsel incurred a total of $2,162.85 in costs, broken down into $400.00 in filing fees, $70.00 in costs for service of process, $220.56 in costs for FedEx and certified mail, $781.77 in transportation costs, and $700.00 in expert witness costs. *Id.*  The Court finds these costs reasonable and, accordingly, grants the request.

### 3. Incentive Award

Plaintiff requests an incentive award of $1,800.00 for his service as class representative in this action.  Dkt. No. 55 at 16.  Defendant does not oppose this request, as agreed.

"[N]amed plaintiffs . . . are eligible for reasonable incentive payments." *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003).  Courts evaluate whether a proposed incentive award is reasonable by considering "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions," and "the amount of time and effort the plaintiff expended in pursuing the litigation[.]" *Id*. at 977.  Many courts in this circuit

have held that a $5,000 incentive award is "presumptively reasonable." *See, e.g.*, *Harris v. Vector Marketing Corp.*, No. 08-cv-5198, 2012 WL 381202, at *7 (N.D. Cal. Feb. 6, 2012) ("Several courts in this District have indicated that incentive payments of $10,000 or $25,000 are quite high and/or that, as a general matter, $5,000 is a reasonable amount.") (collecting cases).

In his declaration, Plaintiff avers that he spent approximately five hours working on this case, reviewing the complaint, preserving relevant documents, and participating in the settlement negotiation process. Dkt. No. 59 ¶¶ 1-2. Courts in this district have granted incentive awards in food-labeling cases where the named plaintiffs stayed "actively involved" in the litigation. *See e.g., Miller*, 2015 WL 758094, at *7. Plaintiff appears to have done so. In light of Plaintiff's service to the class, the Court finds that the requested incentive award is fair and reasonable.

### III. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiff's motion for final approval of the proposed class action settlement agreement. Additionally, the Court **GRANTS** Plaintiff's motion for attorneys' fees and costs and Plaintiff's class representative incentive award. The parties are instructed to file a proposed judgment within three days of this Order.

**IT IS SO ORDERED.**

Dated: 8/1/2016

HAYWOOD S. GILLIAM, JR.
United States District Judge